BENNETT JESTER,

    Plaintiff,

  v.                                  Case No. 19-CV-793

ANDREW M. SAUL,
**Commissioner of Social Security**,

    Defendant.

## DECISION AND ORDER

Bennett Jester[1] seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed.

## BACKGROUND

Jester served as a geo special intelligence analyst in the United States Air Force from February 14, 2012 until September 27, 2013 while stationed in South Korea. (Tr. 41, 240, 365.) During her time in the military, Jester experienced multiple traumatic stressors, including viewing training footage depicting the killing of women and children and witnessed video footage of the Korean government killing its own people at "pop-up markets." (Tr. 365–66.) Jester also suffers from congenital scoliosis and sustained a back injury while serving in the military that exacerbated her back problems. (Tr. 713.) In a decision dated April 6, 2018,

---

[1] During the relevant time period, the evidence indicates that Jester transitioned from identifying as male to identifying as female. (Tr. 20.) Accordingly, I will use female pronouns throughout this decision.

the Department of Veterans Affairs ("VA") determined that Jester was entitled to individual unemployability effective September 18, 2017 due to lumbosacral strain with a history of scoliosis, post-traumatic stress disorder ("PTSD"), and depression. (Tr. 232–49.) The decision partially relied on a VA contract examination with medical opinion conducted by Logistic Health Incorporated on January 29, 2018. (Tr. 241, 243.)

On May 17, 2018, Jester filed an application for a period of disability and disability insurance benefits with the Social Security Administration alleging disability beginning on June 30, 2016 due to a lumbosacral strain, scoliosis, PTSD, and major depressive disorder ("MDD"). (Tr. 183.) Jester's application was denied initially and upon reconsideration. (Tr. 17.) Jester filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on January 3, 2019. (Tr. 31–52.) Jester testified at the hearing, as did Bob Hammond, a vocational expert. (Tr. 17, 32.)

In a written decision issued January 24, 2019, the ALJ found that Jester had the following severe impairments: lumbosacral strain, congenital scoliosis, PTSD, and depression. (Tr. 19.) The ALJ further found that Jester did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 20–22.) The ALJ found that Jester had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 23–25.) Specifically, Jester was restricted to no climbing of ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally balancing, stooping, crouching, kneeling, and crawling; and no exposure to heights or moving machinery. (Tr. 23.) Jester was further limited to a job where she could understand, carry out, and remember no more than simple instructions and perform simple, routine tasks in an environment free from fast-paced

production requirements. (Tr. 23.) Finally, Jester was restricted to jobs that involve only simple work-related decisions; few, if any, workplace changes; and only occasional interactions with the public, co-workers, or supervisors. (*Id.*)

While the ALJ found that Jester was unable to perform any of her past relevant work as a security officer, the ALJ found that given Jester's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. 25–26.) As such, the ALJ found that Jester was not disabled from her alleged onset date until the date of the decision. (Tr. 26.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Jester's request for review. (Tr. 1–5.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does

3

not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Jester alleges the ALJ erred by failing to: (1) properly consider the VA's April 2018 finding of unemployability; (2) properly evaluate the medical evidence regarding her mental capacity; and (3) properly evaluate her need to walk with a cane. (Pl.'s Br., Docket # 10.) I will address each argument in turn.

#### 2.1 Consideration of VA Decision

Jester argues the ALJ erred in failing to consider the VA's April 6, 2018 finding that Jester was unemployable due to her PTSD, depression, and back problems. Jester underwent several Compensation and Pension ("C&P") evaluations with the VA after being discharged from the Air Force. Jester was evaluated for PTSD on November 7, 2014. (Tr. 397–06.) At this time, the examiner concluded that "[b]ased purely on [Jester's] mental health symptomatology, it is this writer's opinion that [Jester] is fully employable (Vet states that [her] back is [her] only limiting factor when it comes to work)." (Tr. 405.) On April 29, 2017, Jester underwent a C&P evaluation for depressive disorder and gender dysphoria. (Tr. 380–97.) The examiner concluded that Jester met the full diagnostic criteria for depressive disorder and gender dysphoria and that her depressive disorder was connected to her military service. (Tr. 391.) The examiner opined that Jester's depression symptoms were moderate to severe with deficiencies in most areas of occupation and social functioning, that she would have

4

difficultly adapting to stressful situations, and that she would have an inability to establish and maintain effective relationships. (Tr. 391–92.) Jester underwent a C&P examination for her back impairments on May 1, 2017. (Tr. 371–80.) The examiner concluded that Jester's back condition did not impact her ability to work, noting that she remained independent with her activities of daily living and was able to drive herself to the examination. (Tr. 379–80.) Jester underwent another C&P examination for PTSD on July 17, 2017. (Tr. 362–71.) The examiner again concluded that based "purely on this veteran's mental health symptomatology, it is this writer's opinion that the veteran is employable." (Tr. 371.)

On January 29, 2018, Jester was again evaluated for PTSD, depression, and lumbosacral strain. (Tr. 243.) While the examination itself does not appear in the record, the VA referenced and cited to the examination in its April 6, 2018 finding of unemployability. The VA's decision states as follows:

> On your application you reported that your service connected [PTSD], depression, and lumbosacral strain with history of scoliosis prevent you from securing and following substantially gainful employment. You attended VA examinations for these conditions on January 29, 2018. The examiner reported that your service connected [PTSD] with [MDD] and alcohol and opioid use disorder would totally impact your level of occupational and social impairment. It was noted that you have a history of chronic anxiety, mistrust in others, depression, poor motivation and mood, difficulty adapting to work like setting and problems forming relationships, which impact your ability to work. Although the examiner reported that your service connected lumbosacral strain with history of scoliosis would not impact your ability to work the evidence as a whole, shows you have constant pain and stiffness with limited range of motion in your back. Aggravating factors include bending, lying down too long, prolonged standing, going upstairs, walking, lifting, and carrying things.

(Tr. 243.)

Jester principally argues that the ALJ did not consider the VA's April 6, 2018 finding of unemployability, or the January 29, 2018 medical evaluation referenced in the VA's

5

decision. (Pl.'s Reply Br. at 2–3, Docket # 15.) Jester faults the ALJ for relying, at least in part, on the July 2017 evaluation in finding her not disabled when there was a more recent evaluation to consider. (*Id.*)

The ALJ's failure to reference the April 6, 2018 VA decision, in and of itself, is not error. In fact, the regulations specifically state that for claims filed on or after March 27, 2017 (Jester's claim was filed May 17, 2018), the SSA "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. The regulation provides that because other governmental agencies and nongovernmental entities "make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules," a decision "by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits . . . is not binding on us and is not our decision about whether you are disabled or blind under our rules." *Id.*

The ALJ's failure to consider the January 29, 2018 evaluation the VA relied upon is a more complicated matter. The regulation provides that the SSA will "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)." *Id.* The ALJ in a Social Security hearing has a duty to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). On the other hand, the relevant regulation provides that when considering the disability decision of another governmental agency, the SSA will consider all of the supporting evidence underlying the decision "*that we receive as evidence in your claim.*" § 404.1504 (emphasis added). *Compare* 20 C.F.R. § 404.1504

6

("that *we receive* as evidence in your claim") (emphasis added) *with* 20 C.F.R. § 404. 1513 (stating that evidence is "anything *you or anyone else submits* to us *or that we obtain* that relates to your claim") (emphasis added). Here, Jester was represented by counsel during the administrative proceedings. *See Nicholson v. Astrue*, 341 F. App'x 248, 253–254 (7th Cir. 2009) (citing *Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)) ("The ALJ is entitled to assume that a claimant represented by counsel 'is making his strongest case for benefits.'"). Neither Jester nor the Commissioner cites the actual January 29, 2018 evaluation and, despite careful review of the over 1,000-page record, I have not found the evaluation in the record. Given that the VA's decision is not binding on the SSA and the claimant did not provide the January 29, 2018 evaluation to the ALJ, I do not find that the ALJ erred by failing to procure the record himself or consider it in his decision.

### 2.2 RFC Assessment of Mental Capacity

Jester argues the ALJ "misread, misconstrued, and/or distorted the evidence" regarding Jester's mental capacity. First, Jester argues that while the ALJ considered evidence supporting her PTSD, the ALJ erred by stating that Jester had "constant nightmares of trauma experienced while observing training videos while in the Air Force" while ignoring the fact that she also witnessed many of the traumas in real time. (Pl.'s Br. at 26–27.) Jester argues that the "difference between watching people being killed in a training video and monitoring/witnessing live footage of people being killed is subtle, but significant; especially in considering the severity of a person's PTSD and the triggers associated with it." (*Id.* at 27.) While I do not doubt Jester experienced trauma related to viewing both recorded and real time videos of people being killed, Jester fails to explain how the ALJ failed to account for the distinction in her RFC. As such, the ALJ did not err in this regard.

Jester also argues the ALJ erred when stating that "considering the claimant's diagnoses and subjective complaints of social anxiety secondary to the transition process, the residual functional capacity restricts the claimant to only occasional interaction with others." (*Id.* at 27 (citing Tr. 21.).) Jester argues the ALJ attributes Jester's anxiety solely to her transitioning process, instead of also considering her anxiety secondary to her PTSD. (*Id.*) Jester argues the ALJ does not take into account the full effect of her impairment or how it affects her ability to interact with others. (*Id.*) Jester points specifically to the fact that seeing shadows, or seeing something out of the corner of her eye, causes anxiety and panic (which are triggers associated with PTSD). (*Id.*) Jester has not demonstrated that the ALJ failed to account for either her anxiety or her PTSD. The ALJ credited Jester's testimony that being around strangers or in groups heightens her anxiety and causes her to socially isolate. (Tr. 20, 43.) Jester's testimony that her anxiety stems, in great part, from being around others, is supported by the record. (Tr. 366, 386, 392, 529, 542, 549, 675–76, 1022.) The ALJ restricted Jester to jobs with only occasional interaction with others to address this issue. (Tr. 21.) However, the ALJ did not neglect Jester's PTSD, and addressed limitations in the RFC related to her PTSD symptoms as well. (Tr. 21–22.) Again, Jester has not shown that the ALJ erred in this regard.

Jester also argues that the ALJ misstated the record when he stated that the "evidence does not reflect an exacerbation of symptoms that resulted in emergency treatment or hospitalization, in fact by January 2017 the claimant's PTSD and depression were in remission . . . ." (Tr. 22.) Jester points to a record from September 2017 in which she presented to the emergency room with an exacerbation of symptoms and a fear that she might hurt herself. (Pl.'s Br. at 28 (citing Tr. 558).) Jester further argues that the record shows that only

8

her depression, not her PTSD, was in remission. (*Id.* (citing Tr. 532).) Jester also argues the ALJ wrongly assessed that her PTSD and anxiety improved during the relevant time period. (*Id.*)

Jester is correct that she did present to the emergency room on September 18, 2017 with a tearful affect stating that she had a recent exacerbation of chronic anxiety, depression, and mood swings and feared that she might hurt herself. (Tr. 558.) However, the attending psychologist ultimately concluded that Jester was "not seeking acute MH hospitalization and [did] not meet admission criteria at this time." (Tr. 562.) Thus, although the ALJ did not acknowledge the September 18, 2017 emergency room visit, Jester ultimately was not, in fact, treated or admitted to the hospital for her mental health symptoms on that day. Accordingly, the ALJ did not err in finding that Jester did not receive "emergency treatment or hospitalization." (Tr. 22.)

Jester is also correct that her treating psychiatrist's note that Jester's PTSD was "no longer particularly symptomatic" and that her depression was "in remission" (Tr. 730) indicates that Jester's depression, not her PTSD, was in remission. This is contrary to the ALJ's statement that "by January 2017 the claimant's PTSD *and* depression were in remission." (Tr. 22 (emphasis added).) However, I do not find that the ALJ's misstatement affects the outcome. The ALJ credited *both* Jester's PTSD *and* depression, finding them to be severe impairments that limit her ability to perform work activities. (Tr. 19–20.) Although the ALJ did not find Jester's symptoms as severe as she alleged, the ALJ did credit Jester's symptoms related to these impairments and fashioned appropriate restrictions in her RFC. The record supports that with ongoing medication and therapy, Jester was better able to cope

9

with her mental health symptoms. (Tr. 434, 931, 1076, 1133.) Thus, Jester has not shown the ALJ erred in this manner.

Finally, Jester argues the ALJ erred by failing to recognize the fact that for a year and a half, Jester attended some type of mental health therapy that would interfere with her ability to maintain gainful employment. (Pl.'s Br. at 28–29.) The Commissioner countered that Jester failed to show that her therapy sessions, which lasted either 60 minutes or less, would add up to more than one day of work per month and thus be work preclusive per the VE's testimony. (Commissioner's Br. at 8, Docket # 14.) In her reply brief, Jester acknowledges that "Commissioner's counsel offers fair reasoning for why Ms. Jester could be able to attend therapy at such a frequent rate and still maintain work. However, Ms. Jester only stated that it would be a safe assumption that the need to attend therapy so frequently would interfere with the ability to maintain gainful employment." (Pl.'s Reply Br. at 4, Docket # 15.) Jester's "safe assumption" is not evidence and fails to explain how the ALJ erred in considering the frequency of her mental health appointments.

In sum, Jester has failed to show the ALJ improperly accounted for her mental health symptoms in her RFC.

### 2.3 Use of a Cane

Finally, Jester argues the ALJ erred by improperly dismissing her need to use a cane. An ALJ must include use of a cane or other hand-held assistive device in the RFC if the ALJ finds that it is medically necessary. *See Tripp v. Astrue*, 489 F. App'x 951, 655 (7th Cir. 2012). A finding of medical necessity must rest on "medical documentation establishing the need for a hand-held assistive device to aid in walking and standing, and describing the circumstances for which it is needed." SSR 96–9p; *see also Tripp*, 489 F. App'x at 655. The Seventh Circuit

has suggested that a finding of medical necessity requires an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." *Id.* (citing *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (non-precedential decision) (provision of cane to claimant by VA medical service at physician's request did not satisfy medical necessity standard); *Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009) (non-precedential decision) (doctor's statement that claimant "uses a cane to walk" did not establish medical necessity); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (doctor's reference to "script" for cane and checking box on printed form corresponding to statement that "hand-held assistive device medically required for ambulation" was insufficient to establish medical necessity)). References in the record to use of such devices are not sufficient to establish medical necessity if they are traceable to self-reports and physicians' observations that the claimant presented with such a device. *Id.* Even a physician's statement that a claimant "needs" such a device may not establish medical necessity if it is unclear whether this was the doctor's medical opinion or merely a restatement of what was told to him. *Id.*

Here, the ALJ rejected Jester's claim that she requires a cane to ambulate and for stability because no medical provider prescribed her a cane. (Tr. 24.) The ALJ further noted that in June 2017, Jester's gait was normal and she did not use an assistive device. (*Id.*) The ALJ acknowledged that in January 2018, Jester's medical provider noted that Jester would "occasionally benefit from a cane during flares," and did, in fact, ambulate with a cane during a flare-up of her back pain in June 2018. (*Id.*)

Jester asserts that SSR 96-9p should be interpreted as meaning that a prescription for the cane is not necessary for the ALJ to find it relevant to the RFC. (Pl.'s Br. at 29.) In fact, SSR 96-9p says nothing about prescriptions one way or the other. It requires "medical

11

documentation establishing the need for a hand-held assistive device." Whether a prescription exists can be relevant to a finding of medical necessity, *see Shonda S. v. Berryhill*, No. 118CV00715JRSMJD, 2019 WL 1323922, at *5 n.7 (S.D. Ind. Mar. 25, 2019) ("However, the ALJ is required to consider documentation that establishes whether an ambulatory aid is medically required, which would make the presence, at least, of a prescription relevant."), even if it is not dispositive of the issue, *see Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (stating that "[a]bsurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist"). The ALJ did not err in considering the lack of prescription among other factors in finding Jester's use of a cane not medically necessary.

The ALJ's finding that a cane was not medically necessary is otherwise supported by the evidence. As previously stated, Jester suffers from congenital scoliosis and a lumbosacral strain. Despite Jester's back impairments, the records show that from December 2016 until January 2018, Jester ambulated with a non-antalgic gait and did not use an assistive device. (Tr. 367, 542, 549, 620, 694, 1022.) In January 2018, Jester's treating physician, Dr. Mark England, referred Jester to physical therapy, noting that Jester suffers from "scoliosis and chronic back pain. Occasionally would benefit from a cane during flares." (Tr. 305.) This is a far cry from medical documentation establishing the need for a hand-held device. SSR 96-9p. On January 11, 2018, Jester presented to her physical therapist requesting a cane. (Tr. 306.) Jester stated that she walked with a cane in the past, "maybe 6 years ago." (*Id.*) "Appropriate equipment" was ordered for Jester at this time. (Tr. 307.) Thereafter, until July 2018, Jester presented to her therapy appointments using a cane. (Tr. 407, 416, 424, 434, 443, 500, 516,

521, 523, 525, 930.) However, subsequent to July 2018, until the end of the relevant time period, Jester again ambulated with a normal gait and unassisted. (Tr. 853, 861, 870, 881, 1050, 1061, 1066, 1082, 1133, 1136.) In sum, except for a brief period between January and early July 2018, Jester's gait was normal and she ambulated unassisted. Thus, the record supports the ALJ's finding that a cane was not medically necessary pursuant to SSR 96-9p.

## CONCLUSION

Jester argues the ALJ made a multitude of errors in determining that she was not disabled. I find the decision is supported by substantial evidence. The Commissioner's decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 17th day of July, 2020.

BY THE COURT

*Nancy Joseph*

NANCY JOSEPH
United States Magistrate Judge